HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* FALK ET AL., EXECUTORS.

No. 225. Argued December 11, 1933.—Decided January 15, 1934.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Biggs, Mr. Sewall Key,* and *Miss Helen R. Carloss* were on the brief, for petitioner.

*Mr. Charles F. Fawsett,* with whom *Mr. Richard S. Doyle* was on the brief, for respondents.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

. . The Bristol iron ore mine in Michigan, while subject to a fourteen year lease providing for royalties of nineteen cents per ton, was conveyed to three trustees to hold during two lives and twenty-one years with power to manage, sell, lease, mortgage or otherwise dispose thereof. After providing for payment of taxes, expenses, etc., the deed directed:

" Except as above authorized to be expended, paid out or retained, all proceeds which shall come to the hands of the Trustees from said property or from any use which may be made thereof, or from any source whatsoever hereunder as received by the Trustees shall belong to and be

the property of the beneficiaries hereunder to be distributed and paid over to them in proportion to and in accordance with their respective interests as shown herein, or as the same shall from time to time appear as hereinafter provided."

Respondents are the beneficiaries under the deed and owners of the entire economic interest in the mine. Its life was estimated as nine years. Proper depletion allowance would be 13.255 cents per ton of ore extracted.

During the years 1922 to 1926 the trustees collected large sums as royalties. After deducting expenses they distributed what remained among the beneficiaries. Claims for depletion made by the trustees in their tax returns were disallowed.

Each beneficiary claimed the right to deduct from the total received his proportionate share of the depletion. This, he maintained, was not subject to taxation under the statute. The Commissioner demanded payment reckoned upon the whole amount; and the Board of Tax Appeals accepted his view. The court below thought otherwise and sustained the taxpayers.

There is no substantial dispute concerning the facts. Our decision must turn upon construction of the statute.

The Revenue Act of 1921, c. 136, 42 Stat. 227, 239, 242, 246, 247, imposes a tax upon the net income of property held in trust, §§ 210, 211, 219, and directs that in order to determine this there shall be deducted from gross "in the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case." § 214 (a) (10).

Also it requires the fiduciary to make return of the income of the trust, § 219 (b), and provides that whenever income must be distributed to beneficiaries periodically the amounts paid out shall be allowed as an addi-

tional deduction in computing the net income of the trust. In the latter event there shall be included in computing the net income of each beneficiary so much of the income of the trust as he has received. § 219 (e).*

The relevant provisions of the Revenue Acts of 1924 (c. 234, 43 Stat. 253, 269, 272, 275) and 1926 (c. 27, 44 Stat. 9, 26, 28, 32) are substantially the same as those in the Act of 1921.

The argument for the Commissioner is this—The entire proceeds from the working of a mine constitute income within the constitutional provision and may be subjected to taxation without regard to depletion. Here the beneficiary claims deduction for an item subject to taxation as gross income; but no provision in the statute allows him to subtract anything because of depletion.

Moreover, § 219 expressly requires every beneficiary to include in his return the portion of the income of a trust distributed to him. Thus in terms he is subjected to taxation upon the whole of this.

Whatever may be said concerning the power of Congress to treat the entire proceeds of a mine as income, ob-

---

* Revenue Act, 1921, c. 136, 42 Stat. 227, 247.

Sec. 219 (e). In the case of an estate or trust the income of which consists both of income of the class described in paragraph (4) of subdivision (a) of this section and other income, the net income of the estate or trust shall be computed and a return thereof made by the fiduciary in accordance with subdivision (b) and the tax shall be imposed, and shall be paid by the fiduciary in accordance with subdivision (c), except that there shall be allowed as an additional deduction in computing the net income of the estate or trust that part of its income of the class described in paragraph (4) of subdivision (a) which, pursuant to the instrument or order governing the distribution, is distributable during its taxable year to the beneficiaries. In cases under this subdivision there shall be included, as provided in subdivision (d) of this section, in computing the net income of each beneficiary, that part of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable during the taxable year to such beneficiary.

viously this statute has not undertaken so to do. The plain purpose, we think, was to tax only that portion of the proceeds remaining after proper allowance for depletion. This allowance represents property consumed, is treated as if capital assets, and no tax is laid upon it. The statute must be so applied in practice as to carry out this purpose. The intention was that owners of beneficial interests should not be unduly burdened.

Since 1913 all Revenue Acts have left untaxed the proceeds of a mine so far as these represent actual depletion. And this court has often recognized that this immunity enures to the beneficial owners of the economic interest. *Lynch* v. *Alworth-Stephens Co.*, 267 U.S. 364, 370. " The plain, clear and reasonable meaning of the statute seems to be that the reasonable allowance for depletion in case of a mine is to be made to every one whose property right and interest therein has been depleted by the extraction and disposition ' of the product thereof which has been mined and sold during the year for which the return and computation are made.' "

*United States* v. *Ludey*, 274 U.S. 295, 302. " The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment, As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed."

*Murphy Oil Co.* v. *Burnet*, 287 U.S. 299, 302. " We think it no longer open to doubt that when the execution of an oil and gas lease is followed by production of oil, the bonus and royalties paid to the lessor both involve at

least some return of his capital investment in oil in the ground, for which a depletion allowance must be made."

*Palmer* v. *Bender,* 287 U.S. 551, 557. " That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in *Lynch* v. *Alworth-Stephens Co.,* 267 U.S. 364. . . . But this Court held that regardless of the technical ownership of the ore before severance, the taxpayer, by his lease, had acquired legal control of a valuable economic interest in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was, therefore, allowed. Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production."

*Freuler* v. *Helvering, ante,* p. 35, construed § 219. We there said—" Plainly the section contemplates the taxation of the entire net income of the trust. Plainly, also, the fiduciary, in computing net income, is authorized to make whatever appropriate deductions other taxpayers are allowed by law. The net income ascertained by this operation, and that only, is the taxable income. . . . But as the tax on the entire net income of the trust is to be paid by the fiduciary or the beneficiaries or partly by each, the beneficiary's share of the income is considered his property from the moment of its receipt by the estate. . . . For the purpose of imposing the tax the Act regards ownership, the right of property in the beneficiary, as equivalent to physical possession."

True it is that § 219 (b) directs that in cases of " income which is to be distributed to the beneficiaries periodically,"

. . . " the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary." But we cannot accept the view that this was intended to impose a tax upon that part of the proceeds which represents the return of capital assets, whenever this has been paid over to the beneficiary. In cases like the one before us so to hold would in practice result in taxing allowances for depletion, contrary to what we regard as the plain intent of the statute.

The petitioner relies upon *Anderson* v. *Wilson*, 289 U.S. 20, 26. The conclusion there rests upon the construction of the will. Under it the beneficiaries became entitled to no income until the executors in their discretion should sell the corpus. " What was given to them was the money forthcoming from a sale. . . . Their interest in the corpus was that and nothing more. . . . A shrinkage of values between the creation of the power of sale and its discretionary exercise is a loss to the trust, which may be allowable as a deduction upon a return by the trustees. It is not a loss to a legatee who has received his legacy in full."

Here the governing instrument directed payment to the beneficiaries of the entire proceeds, less expenditures, etc., and the trustees must be regarded as a mere conduit for passing them to the beneficial owners. Part only of the proceeds was subjected to taxation. The other part was left untaxed and remained so in the hands of the beneficiaries. *Affirmed.*

Mr. Justice Stone, dissenting.

I think the judgment should be reversed.

By a trust created by the lessor of a mine, the trustees were authorized to collect the stipulated cash royalties

of 19¢ per ton on ore mined, and to distribute them to the beneficiaries, who are the taxpayers here, without setting up any reserve for depletion of the lessor's capital investment in the mine. The beneficiaries were given no other interest in the trust property or its income. It is not denied that the entire amount thus received by them is income which may be taxed. See *Burnet* v. *Harmel*, 287 U.S. 103, 107, 108; *Bankers Pocahontas Coal Co.* v. *Burnet*, 287 U.S. 308, 310; *Stanton* v. *Baltic Mining Co.*, 240 U.S. 103, 114; cf. *Lynch* v. *Hornby*, 247 U.S. 339. And the tax is imposed on the entire amount received, subject only to such deductions as the statute permits. The sole question to be decided is whether they are entitled to the benefit of the statute authorizing the taxpayer, in computing the tax, to deduct from income " a reasonable allowance for depletion and for depreciation of improvements according to the peculiar conditions in each case."

As the statute permits the deduction only because the allowance represents a return to the taxpayer, in the form of income, for some part of his capital worn away or exhausted in the process of producing the income, see *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299; *Bankers Pocahontas Coal Co.* v. *Burnet, supra; United States* v. *Dakota-Montana Oil Co.*, 288 U.S. 459, it would seem plain that there is no occasion for a depletion allowance, and that the statute authorizes none where as here the taxpayer, a donee of the income, has made no capital investment in the property which has produced it. This was not doubted where the deduction claimed, but denied, was for depreciation, *Weiss* v. *Wiener*, 279 U.S. 333, and it was only because the court concluded that the taxpayer had made a capital investment, represented by the minerals in place, that he was permitted to deduct an allowance for depletion from royalties received from the production of an oil well in *Palmer* v. *Bender*, 287 U.S.

551, and of a mine in *Lynch* v. *Alworth-Stephens Co.*, 267 U.S. 364. The function of the allowance for depletion as a means of securing to the taxpayer a credit against gross income for so much of his capital investment as is restored from the income does not differ from that for depreciation or obsolescence when allowed as a deduction. See *United States* v. *Ludey*, 274 U.S. 295; *Gambrinus Brewery Co.* v. *Anderson*, 282 U.S. 638; *United States* v. *Dakota-Montana Oil Co., supra.* Legally and economically the statutory allowances for depletion and depreciation stand on the same footing. Both are means of restoring capital invested, the one, in ore, the other, in structures and improvements. Both are allowed by the same language in a single statute. Neither has any function to perform if the taxpayer has made no investment to be restored from income received. The incongruity of allowing the deduction for depletion where the taxpayer has made no capital investment but denying it for depreciation is apparent.

The income here, derived from mining royalties, cannot be said to be a return of the taxpayer's capital because if paid to the lessor it would have restored to him some part of his capital investment. The lessor, by directing that the royalties be distributed to the beneficiaries, cut himself off from the enjoyment of the privilege which the statute gives to restore his capital investment from royalties, and he has denied that privilege to the trustees. The taxpayer may not claim the benefit of a deduction which the statute grants to another, *Dalton* v. *Bowers*, 287 U.S. 404; *Burnet* v. *Clark*, 287 U.S. 410; *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415, and the petitioners are in no better position to claim the privilege because the lessor, to whom it was given, has relinquished it.

MR. JUSTICE BRANDEIS and MR. JUSTICE CARDOZO concur in this opinion.